IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HAROLD GRIFFITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:11cv1084-WKW |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion by James Harold Griffith ("Griffith") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

## I.  INTRODUCTION

On October 21, 2009, a jury found Griffith guilty of manufacturing 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count 1); possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 2); two counts of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Counts 3 and 6); maintaining drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (Count 4); and possessing methamphetamine, in violation of 21 U.S.C. § 844(a)(Count 5).  On January 8, 2010, the district court sentenced Griffith to a total term of 248 months in prison.

Griffith appealed, arguing that the district court erred in denying his motion to suppress evidence.  On September 28, 2010, the Eleventh Circuit Court of Appeals issued

an opinion affirming his convictions and sentence.  *United States v. Griffith*, 379 Fed. App'x

613 (11th Cir. 2010).  Griffith filed no petition for certiorari review with the United States

Supreme Court.

On September 15, 2011, Griffith, proceeding *pro se*, filed this motion under 28 U.S.C.

§ 2255 asserting claims of ineffective assistance of counsel, most of which center on the drug

amount for which he was held accountable.  Griffith specifically asserts:

1.    His trial counsel rendered ineffective assistance by failing to –

    (a)    investigate, and present the district court with, case law regarding accountability for drug amounts in mixtures or substances containing a particular controlled substance;

    (b)    obtain an independent expert to analyze the liquid seized by the police and testify regarding the usable methamphetamine producible from it;

    (c)    properly cross-examine the Government's forensic chemist regarding the usable methamphetamine in the seized liquid;

    (d)    object to the district court's jury instruction regarding a "mixture or substance" containing methamphetamine; and

    (e)    object to the drug amount attributed to him in the presentence report and adopted by the district court.

2.    His appellate counsel rendered ineffective assistance by failing to present claims challenging –

    (a)    the district court's jury instruction;

    (b)    the sufficiency of the evidence on the manufacturing charge and the charge of maintaining drug-involved premises; and

    (c)    the drug amount attributed to him at sentencing.

Doc. No. 1 at 4-9; Doc. No. 2 at 4-21.[1]

After consideration of Griffith's § 2255 motion, the submissions supporting and opposing the motion, and the record, the court concludes that an evidentiary hearing is not required and that, under Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

## II. DISCUSSION

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved

---

[1] Document numbers ("Doc. No.") are those assigned by the Clerk in the instant civil action. However, references to the trial transcript ("Tr.") are to Doc. No 127 in Griffith's criminal proceeding (Case No. 3:09cr96-WKW) and references to jury instructions are to Doc. No 87 in the criminal proceedings.  All page references are to those assigned by CM/ECF.  References to exhibits ("Ex.") are to exhibits filed by the Government with its response.

for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that

4

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will

5

the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

The Supreme Court has held a criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52. Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel presented other strong issues. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000).

1.      **Claims Against Trial Counsel**

     (a)      <u>Failure to investigate, and present court with, law regarding attributable drug amounts in mixtures</u>

Griffith contends that his trial counsel rendered ineffective assistance by failing to adequately investigate the law regarding accountability for drug amounts in mixtures or substances containing a particular controlled substance. Doc. No. 1 at 4-7; Doc. No. 2 at 4-11. He faults his counsel for failing to present the district court with case law holding that only the usable, i.e, "marketable," amount of a controlled substance in a mixture containing the drug should be counted in determining attributable drug amount. *Id*. He argues that under *United States v. Rolande-Gabriel*, 938 F.2d 1231 (11th Cir. 1991), and other appellate decisions, only the usable methamphetamine in the liquid mixture police seized from his

6

residence should have been considered in determining his statutory minimum sentence for Count 1[2] and his guidelines sentencing range,[3] but that the unusable liquid in the mixture was improperly included in the calculation of his sentence. A bit of history will help with fully understanding this argument.

In February 2008, narcotics investigators learned that Griffith was operating a meth lab from his Dadeville residence. A search of the residence uncovered numerous items used in the manufacture and consumption of methamphetamine. During the search, several jars and bottles containing bi-layer liquids were found; those liquids were sent to the forensic lab for analysis. Government Exhibit #9 at trial, which was seized during the search, was a large glass jar containing a bi-layered liquid. Tr. at 157-59. Forensic chemist Melissa Kelly Armstrong testified that she used a pipette to draw the top layer of liquid away from the bottom layer and placed the separated liquids into beakers for analysis and measurement. *Id.* at 159, 165-66. While analysis of the bottom layer of liquid did not reveal the presence

---

[2] The statutory penalty for manufacturing 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine for individuals, such as Griffith, with a prior felony drug conviction is "not ... less than 10 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1)(B)(viii). The prescribed statutory penalty for manufacturing an undetermined amount of a mixture or substance containing a detectable amount of methamphetamine for individuals with a prior felony drug conviction is "not more than 30 years," with no mandatory minimum 21 U.S.C. § 841(b)(1)(C).

[3] Section 2D1.1 of the Sentencing Guidelines provides that a defendant's offense level is to be calculated based on the weight of the controlled substance or mixtures containing a controlled substance. *See* U.S.S.G. § 2D1.1(3). Because Griffith's advisory guidelines range on the manufacturing count was calculated as 188 to 235 months in prison – greater than the 10-year statutory minimum in 21 U.S.C. § 841(b)(1)(B)(viii) and less than the 30-year statutory maximum in 21 U.S.C. § 841(b)(1)(C) – his guidelines range effectively determined the 188-month sentence imposed for the manufacturing count.

of any controlled substance, analysis revealed that the top layer of liquid contained the presence of methamphetamine. *Id*. at 159-60. Armstrong testified this top layer of liquid weighed 106.20 grams. *Id*. at 160.

The same procedure was used to analyze and measure the contents of several other jars containing bi-layer liquids seized during the search of Griffith's residence. *See* Tr. at 162. The top layer of liquid in Government Exhibit #71-A contained the presence of methamphetamine and weighed 21.65 grams. *Id*. The top layer of liquid in Government Exhibit #71-F contained the presence of methamphetamine and weighed 22.02 grams. *Id*. at 163.

Armstrong also testified regarding her analysis of the contents of two bottles seized from Griffith's residence. The top layer of the bi-layer liquid in one of these bottles, Government Exhibit #8, contained the presence of pseudoephedrine, the main precursor to the manufacturing of methamphetamine, and weighed 109.70 grams. Tr. at 159-60; *see* Tr. at 48. The liquid in the second of these bottles, Government Exhibit #19, contained the presence of pseudoephedrine and weighed 15.20 grams. *Id*. at 158-60.[4]

To determine Griffith's base offense level under the Sentencing Guidelines, the presentence investigation report ("PSI") used the guideline Drug Equivalency Tables to convert the methamphetamine and pseudoephedrine to their marijuana equivalents, on authority of U.S.S.G. § 2D1.1, comment. (n.10). The PSI noted that the total of 150.18

---

[4] During the search, investigators also found 0.31 grams of methamphetamine in Griffith's shirt pocket. Tr. at 11, 156-57.

grams of methamphetamine converted to 300.36 kilograms of marijuana, and the total of 124.90 grams of pseudoephedrine converted to 1,249 kilograms of marijuana. Doc. No. 8-5 at pp. 7-8, ¶ 30. The PSI determined that Griffith's base offense level was 32, based on the total marijuana equivalency of 1,549.36 kilograms. *Id*. Two levels were added because the offense involved the unsafe storage of hazardous materials. *Id*. at p. 8, ¶ 32. Based on an offense level of 34 and a criminal history category of III, Griffith's advisory guidelines range was 188 to 235 months for all counts except Count 2 (firearm possession in furtherance of a drug-trafficking crime). *Id*. at p. 7 ¶ 29; p. 10, ¶ 46. Griffith was subject to a mandatory 5-year consecutive sentence on that count under 18 U.S.C. § 924(c).

The district court adopted the PSI calculations, stated that it had considered the sentencing factors in 18 U.S.C. § 3553(a), and sentenced Griffith to concurrent terms of 188 months' imprisonment on all counts except Count 2 and to a consecutive term of 60 months (5 years) on Count 2, for a total term of 248 months' imprisonment.

As noted, Griffith claims that the district court erred in considering unusable liquid in the seized mixtures when calculating his sentence. He argues that his trial counsel was ineffective for failing to present the court with arguments and law to support this claim.

The commentary to U.S.S.G. § 2D1.1 explains that, "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1, "Notes to Drug Quantity Table, Note A." The commentary further explains that

"[i]n the case of a mixture or substance containing ... methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the ... methamphetamine (actual), whichever is greater."  U.S.S.G. § 2D1.1, "Notes  to Drug Quantity Table, Note B."

In *Chapman v. United States*, 500 U.S. 453, the Supreme Court held that it is proper to include the weight of a dilutant, cutting agent, or carrier medium when determining the total weight of a "mixture or substance containing a detectable amount" of a particular drug.[5] 500 U.S. at 459-60 (quoting 21 U.S.C. § 841(b)(1)(A)).  The Court acknowledged that "[i]n some cases, the concentration of the drug in the mixture is very low," but determined that Congress intended for the entire mixture or substance to be weighed so "long as it contains a detectable amount" of the drug.  *Id*. at 459-61 ("Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence.").  In reaching that conclusion, the Court described a "mixture" in these terms:

> A "mixture" is defined to include "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence."  A "mixture" may also consist of two substances blended together so that the particles of one are diffused among the particles of the other.

*Id*. at 462 (citation omitted).  The Court distinguished a "mixture" from a "container," such

---

[5] The Court in *Chapman* specifically held that the carrier medium of blotter paper should be included along with the weight of LSD under the "mixture or substance" language of 21 U.S.C. § 841 and the Sentencing Guidelines.  500 U.S. 453.

as a bottle or a car, from which a drug is easily distinguished and separated. *Id*. at 462-63.

Griffith argues that his case is controlled by *Rolande-Gabriel*, *supra*, where the drug mixture contained 7.2 grams of cocaine base, 65 grams of cutting agent, and over 165 grams of what the Government's chemist characterized as "liquid waste." *See* 938 F.2d at 1233. The district court calculated the sentence based on the total weight of the mixture, but on appeal, the Eleventh Circuit vacated and remanded, concluding that the weight of unusable mixtures should not be counted. The appellate court held that "[t]he entire weight of drug mixtures which are usable in the chain of distribution should be considered in determining a defendant's sentence." *Id*. at 1237. The court noted the sentencing disparity that would result from considering the entire amount of drugs when only a small portion was usable. *Id*.

Griffith maintains that he was manufacturing methamphetamine in multiple stages, that the liquids found in the separate containers at his residence "represented the various stages in that process," and that only a small amount of the methamphetamine and pseudoephedrine detected in the seized liquids was "usable," i.e, could have been converted into a marketable powder. No. 2 at 9. According to Griffith, he began the manufacturing process with only 2.4 grams of pseudoephedrine, and all the liquids in the containers used in the multi-stage process were "'waste materials' and/or 'unusable.'" *Id*. at 10. He contends that if his counsel had "done his job" by presenting the court with case law regarding the calculation of drug amounts in mixtures, he would have been held responsible for at most the

11

2.4 grams of pseudoephedrine converted into its marijuana equivalency, which would have resulted in a base offense level of 18 instead of 32 as recommended by the PSI and adopted by the district court.  *Id.*

The Government responds this case is controlled by *United States v. Segura-Baltazar*, 448 F.3d 1281 (11ᵗʰ Cir. 2006), and that the court properly considered the entire weight of the drug mixtures.  *See* Doc. No. 8 at 15-18.  In *Segura-Baltazar*, a case involving a charge of "mixture or substance" containing a detectable amount of methamphetamine, the Eleventh Circuit held that it was not error for the district court to have considered the entire amount of a mixture or substance in determining the weight to be used in determining the proper sentence.  448 F.3d at 1291-94.  This was true even though there had been a stipulation that, recovered from the defendant's home was "1.2 kilograms (net weight) of mixture and substance with a detectable amount of methamphetamine and dimethyl sulfone, a common 'cutting' agent for methamphetamine.  The quantitative result of the mixture was less than 1%."  *Id*. at 1292.  The defendant had argued that the cutting agent had diluted the mixture such that it was not marketable or usable.  The district court rejected that claim, found no evidence that the drugs were not marketable, and imposed a sentence based on the entire amount of drugs.  On appeal, the Eleventh rejected *Rolande-Gabriel* without explanation and affirmed the district court.  *Id*. at 1293.

In the present case, unlike *Rolande-Gabriel*, there is no evidence that the drug mixture was "easily distinguishable from, and separated from" a liquid waste carrier medium.  *See*

938 F.2d at 1237. There, "the government chemist easily distinguished the liquid from the [cocaine] drug powder and its cutting agent, characterizing it as 'non-drug waste.' Following extraction of the 'waste' material, the chemist threw the liquid away."[6] *Id*. In the present case, the testimony regarding the composition of seized bi-layer liquids was limited largely to which portions did or did not contain the presence of methamphetamine or pseudoephedrine. And unlike *Rolande-Gabriel* or *Segura-Baltazar*, there was no testimony or factual findings regarding the usability or marketability of the drug mixtures. Consequently, the outcome of this case is not controlled by either *Rolande-Gabriel* or *Segura-Baltazar*. *See United States v. Borque*, 262 Fed.App'x 924, 928 (11th Cir. 1998) (Eleventh Circuit decision finding, where neither *Rolande-Gabriel* or *Segura-Baltazar* was directly on point regarding accountability for drug amounts in a mixture, the outcome was controlled by *Chapman* and the guidelines commentary to U.S.S.G. § 2D1.1 explaining that, "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the

---

[6] Griffith also cites that the Eleventh Circuit's decision in *United States v. Newsome*, 998 F.2d 1571 (11th Cir. 1993), in support of his argument regarding "usability." In *Newsome*, the Eleventh Circuit held that "sludge substances" containing trace amounts of methamphetamine seized from a meth lab should not have been included in the calculation of the defendants's sentence. 998 F.2d at 1578-79. However, unlike in Griffith's case, the Government's chemist in *Newsome* expressly testified that the sludge substances were unusable and toxic. *Id*.at 1578. The Eleventh Circuit noted that there was "no suggestion that [the sludge substances] were goods in progress that would have eventually become some amount of marketable methamphetamine." *Id*. This court notes that the Eleventh Circuit in *Newsome* found that the entire amount of 4.12 kilograms of a mixture described as "methamphetamine oil" seized from the defendant, which the chemist testified would yield 4.99 kilograms of methamphetamine, was properly included in the calculation of the defendant's sentence. *Id*. at 1577-78.

13

controlled substance").

As noted above, Griffith states that the liquids seized from his residence "represented the various stages in [the] process" of manufacturing methamphetamine. The mixtures considered in the PSI and by the district court in calculating attributable drug amounts were found by the forensic chemist to contain detectable amounts of methamphetamine or pseudoephedrine. There is no evidence, apart from Griffith's unsubstantiated assertion, that the liquid carrier medium included unusable waste. The separated liquids containing no detectable amounts of methamphetamine or pseudoephedrine were not considered in the calculation of drug amounts attributed to Griffith. From the record, this court can find no basis for excluding as "unusable in the chain of distribution" any amounts of the mixtures containing a detectable amount of a controlled substance seized in mid-processing.

Griffith fails to demonstrate that unusable quantities of the seized mixture were erroneously included in the calculation of his sentence, much less demonstrate the extent, to which the inclusion of unusable waste in that calculation actually affected his sentence. Even if the mixture included unusable waste, Griffith does not establish how much was unusable, and there is no principled way for this court to determine that any unusable amount was so great as to affect Griffith's sentence. To establish ineffective assistance of counsel under *Strickland*, it is not enough for a petitioner to allege that counsel's purported errors had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Griffith fails to demonstrate actual prejudice resulting from his counsel's failure to present

14

the district court with case law regarding accountability for drug amounts in mixtures or substances containing a particular controlled substance, because he does not present evidence of a factual basis on which application of that case law would matter in his case. He is not entitled to relief based on this claim of ineffective assistance of counsel.

       (b)    <u>Failure to obtain independent expert</u>

In a related claim, Griffith contends his trial counsel was ineffective for failing to obtain an independent expert to analyze the liquid seized by the police and testify regarding the usable methamphetamine producible from it. Doc. No. 1 at 4-7; Doc. No. 2 at 11-12. As the Government correctly states (Doc. No. 8 at 18-19), Griffith does not demonstrate that analysis by an independent expert would have resulted in the expert testifying that the seized liquid contained any unusable waste, or that any unusable waste in the seized liquid, if excluded from any calculation, would have affected his sentence. The absence of any demonstration of actual prejudice, precludes relief on this claim of ineffective assistance of counsel.

       (c)    <u>Failure to properly cross-examine forensic chemist</u>

Griffith also contends his trial counsel was ineffective for failing to properly cross-examine forensic chemist Melissa Kelly Armstrong regarding the usable methamphetamine producible in the seized liquid. Doc. No. 1 at 4-7; Doc. No. 2 at 12-14. Griffith does not demonstrate that such cross-examination of Armstrong would have yielded testimony that the seized liquid contained unusable waste that, if excluded from the drug amount attributed

to him, would actually have affected his sentence. Because he has not demonstrated prejudice, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

(d)   Failure to object to jury instruction

Griffith next contends that his trial counsel was ineffective for failing to object to the district court's jury instruction regarding Count 1, i.e., the charge of manufacturing 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Doc. No. 1 at 4-8; Doc. No. 2 at 14-16. He argues that the court's instruction allowed the jury to convict him of the offense where less than 50 grams of the mixture or substance containing methamphetamine was usable and that the court's instruction should have expressly defined the requirement that the drug mixture be "usable." *Id*.

The district court's jury instruction regarding Count 1 was as follows:

Count One of the indictment charges the Defendant with manufacturing 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

Title 21, United States Code, Section 841(a)(1), makes it a Federal crime or offense for anyone to manufacture a "controlled substance."

Methamphetamine is a "controlled substance" within the meaning of the law.

The Defendant can be found guilty of that offense only if it is proved beyond a reasonable doubt that the Defendant knowingly or intentionally manufactured a mixture or substance containing a detectable amount of methamphetamine as charged.

The Defendant is charged in the indictment with manufacturing a

16

certain quantity or weight of the alleged controlled substance. However, you may find the Defendant guilty of the offense if the quantity of the controlled substance for which he should be held responsible is less than the amount or weight charged. Thus, if you find the Defendant guilty, the verdict form, as I will explain in a moment, will require you to specify your unanimous finding concerning the weight of the controlled substance attributable to the Defendant.

Case No. 3:09cr96-WKW, Doc. No. 87 at 7.

The district court's instruction followed the statute, was in accord with the common practice of proving drug quantity by evidence of quantities seized, and was consistent with *Chapman*'s holding that Congress intended for the entire mixture or substance to be weighed so "long as it contains a detectable amount" of the drug. *See Chapman*, 500 U.S. at 459-61. Griffith's attempt to read additional requirements into the jury instruction for the offense of manufacturing a mixture with a detectable amount of a controlled substance is not persuasive. Further, based on the record, this court cannot say that, had the court's instructions contained the language urged by Griffith, the jury's verdict regarding Count 1 would have been different. For these reasons, Griffith fails to demonstrate the prejudice necessary to sustain a claim of ineffective assistance of counsel. Therefore, he is not entitled to relief based on this claim.

(e)   Failure to object to attributed drug amount

Griffith contends his trial counsel was ineffective for failing to object to the drug amount attributed to him in the PSI and adopted by the district court. Doc. No. 1 at 4-7; Doc. No. 2 at 17-20. Griffith's arguments in this regard are the same ones underlying his claim

17

that his counsel was ineffective for failing to investigate, and present the district court with, case law regarding accountability for drug amounts in mixtures or substances containing a particular controlled substance. That claim was discussed above in Part II.B.1(a) of this Recommendation, where this court found Griffith failed to demonstrate actual prejudice resulting from his counsel's performance in this regard. Therefore, Griffith is not entitled to relief based on this claim of ineffective assistance of counsel.

## 2.     Claims Against Appellate Counsel

### (a)     Failure to present claim regarding jury instruction

Griffith contends his appellate counsel rendered ineffective assistance by failing to present a claim challenging the district court's jury instruction regarding Count 1 of the indictment. Doc. No. 1 at 8; Doc. No. 2 at 20-21. Here, he relies on the arguments he put forward to support his claim that his trial counsel was ineffective for failing to object to this jury instruction. *Id.* That claim was discussed in Part II.B.1(d) of this Recommendation, with the court finding Griffith failed to demonstrate actual prejudice resulting from his trial counsel's failure to object. The same result obtains for Griffith's claim that his appellate counsel was ineffective in this regard. He cannot demonstrate prejudice resulting from appellate counsel's failure to present this claim on appeal. Therefore, he is not entitled to relief on this claim.

### (b)     Failure to present claims regarding sufficiency of evidence on manufacturing charge and charge of maintaining dug-involved

premises

Griffith cursorily asserts that his appellate counsel was ineffective for failing to present claims challenging the sufficiency of the evidence on the manufacturing charge (Count 1) and on the charge of maintaining drug-involved premises (Count 4).[7] Doc. No. 1 at 8; Doc. No. 2 at 20-21. Such a claim arises under *Jackson v. Virginia,* 443 U.S. 307 (1979), in which the Supreme Court held that the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. In other words, a court must determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 318-19 (citations and footnote omitted).

Griffith does not establish he was prejudiced by his appellate counsel's failure to present these claims. The evidence demonstrated that Griffith was operating a meth lab at his residence, that he was engaged in a process of manufacturing methamphetamine that required multiple stages, and that the liquids in various containers found in his residence were part of that process. Mixtures containing the presence of methamphetamine and

---

[7] Count 1 of the indictment alleged, in pertinent part, that Griffith "knowingly and intentionally manufactured 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Tile 21, United States Code, Section 841(a)(1)." Ex. 1 at 1. Count 4 alleged that Griffith "knowingly opened, leased, rented, used and maintained a place at [street address], Dadeville, Alabama, for the purpose of manufacturing, distributing, and using methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 856(a)(1). *Id.* at 2.

weighing a total of 150.18 grams were recovered from these containers after being separated from the liquid in the containers that did not contain methamphetamine.  Griffith also gave arresting officers a statement acknowledging that he had moved equipment for the meth lab from a camper trailer into his house and that he had cooked methamphetamine inside the house.  Tr. at 31-32.  From these facts a rational trier of fact could find the essential elements of the crimes beyond a reasonable doubt.  Because Griffith fails to demonstrate that he would have prevailed on the claims if raised on appeal, he cannot show that his appellate counsel was ineffective for failing to present claims challenging the sufficiency of the evidence on Counts 1 and 4.  He is not entitled to relief based on this claim.

(c)    Failure to present claim regarding drug amount attributed at sentencing

Griffith contends that his appellate counsel rendered ineffective assistance by failing to present a claim challenging the drug amount attributed to him at sentencing.  Doc. No. 1 at 8; Doc. No. 2 at 20-21.  His argument to support this claim is the same argument underlying his claim that his trial counsel was ineffective for failing to investigate, and present the district court with, case law regarding accountability for drug amounts in mixtures or substances containing a particular controlled substance.  His failure to demonstrate prejudice resulted in this court's finding he was not entitled to relief on his claim of ineffective assistance of trial counsel.  *See* Part II.B.1(a) of this Recommendation, above.  Likewise, and for the same reasons, he has not demonstrated that prejudice resulted from his appellate counsel's failure to present this claim.  Therefore, he is not entitled to relief based

20

on this claim of ineffective assistance of counsel.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Griffith be DENIED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **February 23, 2015.**   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 9th day of February, 2015.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE